1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MEG K. SMART,                          )   Case No. CV 08-8243-JC
                                       )
                   Plaintiff,          )
                                       )   MEMORANDUM OPINION AND
        v.                             )   ORDER OF REMAND
                                       )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security,                              )
                                       )
                   Defendant.          )
_____        )

## I.    SUMMARY

On December 15, 2008,  plaintiff Meg K. Smart ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; December 17, 2008 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the
Commissioner is REVERSED AND REMANDED for further proceedings

1

consistent with this Memorandum and Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed properly to evaluate plaintiff's subjective symptoms in determining plaintiff's residual functional capacity.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 16, 2003, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 236-38). Plaintiff asserted that she became disabled on September 1, 1998, due to "[l]ow back vertebra tip above and below fusion and pinch[ed] nerves, mid and low neck sprain/instability vertebra pinch[ed] nerves, [t]horacic back instability causing automatic changes, blood pressure drops, [and] fatigue related colapsing [sic]." (AR 236, 256). Plaintiff's last insured date was September 30, 2003. (AR 20).[1]

The Social Security Administration denied Plaintiff's application initially and on reconsideration. (AR 191-202). Plaintiff requested a hearing, which resulted in four hearings before an ALJ on July 28, 2005, February 14, 2006, June 9, 2006, and August 2, 2007. (AR 203, 86-190). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a vocational expert and two medical experts. (AR 86-190).

On August 16, 2007, the ALJ determined that plaintiff was not disabled from the alleged onset date through plaintiff's date last insured. (AR 18-37). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: "status post laminectomy and fusion of the lumbar spine due to

---

[1]In order for plaintiff to be eligible for disability benefits, plaintiff must establish that she became disabled and therefore unable to engage in substantial gainful activity prior to the expiration of her insured status. See 42 U.S.C. §§ 416(i)(2)(C), 416(i)(3)(A); 20 C.F.R. § 404.131; see also Vertigan v. Halter, 260 F.3d 1044, 1047 (9th Cir. 2001); Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1458 (9th Cir. 1995) (where claimants apply for benefits after the expiration of their insured status based on a current disability, the claimants "must show that the current disability has existed continuously since some time on or before the date their insured status lapsed").

compression fracture, headaches, dizziness, carpal tunnel syndrome, organic mental disorder, and a mood disorder moderate, due to generalized medical condition" (AR 20); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 20-21); (3) plaintiff retained the residual functional capacity to perform sedentary work (AR 21, 30, 36 (adopting medical expert testimony at AR 171-72));[2] (4) plaintiff could not perform her past relevant work (AR 35); (5) plaintiff could perform jobs that exist in significant numbers in the national economy (AR 36 (adopting vocational expert testimony at AR 119-21)); and (6) plaintiff's allegations regarding her limitations were not totally credible (AR 22-35 (discussing extensive medical record)).

The Appeals Council denied plaintiff's application for review.  (AR 6-8).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of

---

[2]The ALJ determined that, through the date last insured, plaintiff:

could lift 10 pounds occasionally and less than 10 pounds frequently.  She could sit for 6 hours out of an 8-hour work day, and she could stand and walk for 2 hours out of an 8-hour work day, with the use of a cane on an as-needed basis. She required a sit/stand option every 15 to 30 minutes.  She could occasionally stoop, bend, and climb stairs.  She could not balance, kneel, crouch, crawl, climb ropes, or work at heights.  Her mental impairment limited her to simple repetitive and moderately complex tasks.

(AR 21).

performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform her past relevant work?[3]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a).

4

1  F.3d 949, 953-54 (9th Cir. 2001) (citing <u>Tackett</u>); <u>see also</u> <u>Burch</u>, 400 F.3d at 679

2  (claimant carries initial burden of proving disability).

3      **B.    Standard of Review**

4      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

5  benefits only if it is not supported by substantial evidence or if it is based on legal

6  error.  <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 882 (9th Cir.

7  2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457

8  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>,

10  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

11  mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing

12  <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

13      To determine whether substantial evidence supports a finding, a court must

14  "'consider the record as a whole, weighing both evidence that supports and

15  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>

16  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

17  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

18  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

19  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

20  **IV.   DISCUSSION**

21      Plaintiff contends that the ALJ erred in finding that plaintiff retains the

22  residual functional capacity to do sedentary work.  Specifically, plaintiff asserts

23  that the ALJ erred in relying on the testifying medical expert's opinion over a

24  consultative examiner's opinion, and over the August 2005 opinion of treating

25  physician, Dr. Wilgarde, who opined that plaintiff would be incapable of

26  completing an eight-hour workday.  (Plaintiff's Motion at 13-15, 17-18; <u>see also</u>

27  AR 1605 (Dr. Wilgarde's opinion)).  Plaintiff also contends that the ALJ erred in

28  rejecting plaintiff's subjective complaints which suggest greater limitations than

1  the ALJ found to exist, without a sufficient credibility finding.  (Plaintiff's Motion

2  at 19-21).

3       For the reasons discussed below, the Court finds that the ALJ erred in

4  assessing plaintiff's credibility.

5       **A.**    **Background**

6           **1.**    **The Relevant Medical Record**

7       Plaintiff was injured on May 28, 1997, when she was hit by a car while she

8  was at work.  (AR 483, 485, 658-59).  Plaintiff suffered an L3 compression

9  fracture and underwent a lumbar laminectomy and L2-L4 fusion on June 4, 1997.

10  (AR 293-320, 322-26, 355-484, 641-47, 696-710, 822-36 (hospital records); 544-

11  45, 589-91, 598, 624, 629, 634, 639, 649, 690-94, 906-12, 915, 919, 959, 983,

12  1005, 1015-16 (imaging results)).[4]  Records from July 3, 1997, when plaintiff was

13  discharged from rehabilitation for her back surgery, indicate that plaintiff's sitting

14  tolerance improved from only 15 minutes per day after plaintiff's operation, to five

15  hours at a time at discharge.  (AR 483; see also AR 490-543, 550-71

16  (rehabilitation hospital records)).  Plaintiff reportedly was walking almost one

17  mile per day by August 26, 1997, and twice daily at 3 1/4 miles per hour by April

18  8, 1998.  (AR 630, 655).[5]

19       On April 9, 1998, Dr. Melvin Snyder cleared plaintiff to return to work with

20  a 25-pound weight restriction.  (AR 650; compare AR 733 (letter of same date

21  noting additional restriction of returning to work starting with four hours daily));

22  AR 957 (letter dated August 13, 1998, noting same); AR 958 (letter dated August

23

24      [4]At around this time, plaintiff was diagnosed with chondrocalcinosis (calcification) of her

25  right knee, along with a middle collateral ligament tear and medial meniscal tear in her right knee

26  requiring arthroscopic surgery by Dr. Lewis Yocum on October 13, 1997.  (AR 321, 327, 483,

627-28, 648, 841, 857, 869-74, 1049-50).  On March 23, 1998, Dr. Yocum cleared plaintiff to

27  return to work with "modified duty" (i.e., no repetitive kneeling, bending or stooping), as long as

plaintiff's back had been cleared.  (AR 848).

28      [5]Nonetheless, doctors prescribed plaintiff a lumbar brace, wheelchair, and hospital bed in

April 1998.  (AR 577-78).

14, 1998, noting plaintiff will return to full-time work on September 1, 1998, with no noted limitations)).  Plaintiff previously had been cleared to return to four hours of work per day, with a 10 pound weight restriction and no prolonged sitting or standing.  (AR 657 (January 8, 1997 letter)).  Plaintiff returned to work, working four to six hours per day, but stopped working in September 1998.  (AR 256).  Plaintiff claims she had to stop work because she could not stay up the number of hours her job required.  (AR 256; see also AR 952-53 (plaintiff's January 5, 1999 "update" explaining why she stopped working)).

The medical record suggests that plaintiff's physical condition worsened after her initial recovery from her spinal surgery.  On November 20, 1998, Dr. Roy Simon evaluated plaintiff for pain management.  (AR 930-35).  Plaintiff complained of body jerking, dizziness when walking or sitting, leg weakness when she walked, pinching and pressure in her low back, hip joint pain, headaches, and memory loss.  (AR 930-31).  Dr. Simon noted that plaintiff's examination was negative for any central neurological disorders, but that plaintiff presented with some symptoms of central dysfunction.  (AR 933).  Dr. Simon recommended further diagnostic studies including serological studies, an electroencephalogram, a nerve conduction velocity study, and an electromyogram of the lower extremities.  (AR 933).[6]

By January 6, 1999, Dr. Snyder declared plaintiff permanent and stationary for plaintiff's workers compensation claim, noting her condition as precluding "semi-sedentary work."  (AR 951).[7]  Plaintiff complained of mild to moderate

---

[6] Neurologist Dr. Ronald Farran performed nerve conduction studies on January 13, 1999, that showed plaintiff also suffers from carpal tunnel syndrome.  (AR 662-66; compare AR 727-29 (normal nerve conduction study done to rule out carpal tunnel syndrome)).  Dr. Farran noted that neurologic follow up should be done since plaintiff had "a number of neurologic symptoms."  (AR 663).

[7] Dr. Yocum prepared a "Permanent and Stationary" report for plaintiff dated January 8, 1999, opining that plaintiff's knee made plaintiff "permanent and stationary," but noting that

(continued...)

1  back pain with lumbar tenderness and dizziness.  (AR 951, 954, 958).[8]  On

2  November 2, 1999, Dr. Snyder operated on plaintiff to remove the rods placed in

3  plaintiff's back to fuse the L2-L4 vertebrae.  (AR 967-72).

4      Thereafter, Plaintiff was treated monthly by Dr. David Wilgarde at the

5  Desert Orthopedic Center from June 22, 2000 through at least June 7, 2005.  (AR

6  1097-1191, 1357-1426, 1544-49, 1558-71).  Plaintiff complained of persistent

7  pelvic and back pain and intermittent leg pain, and an inability to remain upright

8  without feeling dizziness and near syncope, resulting in a limited sitting tolerance.

9  (AR 1172).  Dr. Wilgarde opined that plaintiff was temporarily totally disabled at

10  each of her visits.  (AR 1097, 1100, 1102, 1104, 1106, 1109, 1111, 1114, 1118,

11  1120, 1124, 1126, 1129, 1132, 1135, 1138, 1140, 1142, 1144, 1147, 1150, 1153,

12  1156, 1159, 1162,  1165, 1167, 1169, 1171, 1175,  1178, 1181, 1184, 1559, 1561,

13  1563, 1565, 1568, 1571).  Dr. Wilgarde noted on September 15, 2000, that

14  plaintiff had obtained a reclining wheelchair that plaintiff used to recline if

15  plaintiff became dizzy or lightheaded while away from home.  (AR 1177).  At

16  times plaintiff reported to Dr. Wilgarde in her reclining wheelchair.  (AR 1120,

17  1123, 1125, 1166).  Other times, plaintiff was using walking sticks (bilateral

18  canes).  (AR 1152, 1156, 1164).

19      Dr. Wilgarde prepared a "Permanent and Stationary Report" for plaintiff

20  dated December 18, 2003.  (AR 1550-61).  Dr. Wilgarde's physical examination of

21  plaintiff revealed no acute distress, a normal stance and gait, normal range of

22  motion in the cervical, thoracic and lumbar spine, mild tenderness in the

23

24      [7](...continued)

25  "semisedentary" work would be "appropriate."  (AR 841-42).  In a follow-up dated October 4,
   1999, Dr. Yocum opined that plaintiff was unable to return to work "not based on her knee, but

26  rather on her spine."  (AR 839).

27      [8]Plaintiff was evaluated by Dr. Nelman Low in November 1998 for vertigo problems.
   (AR 891).  Dr. Low noted that plaintiff had a slight impedance in her left ear.  Since plaintiff was

28  considered clinically stable at the time, Dr. Low recommended holding off on any aggressive
   treatment.  (AR 891).

paracervical and upper trapezius muscles and in the gluteal muscles and greater trochanters, but normal strength, sensation and reflexes in the upper and lower extremities.  (AR 1555).[9]  Dr. Wilgarde nonetheless found plaintiff permanent and stationary based on plaintiff's subjective complaints of fatigue, low endurance, back spasms, and intermittent numbness and tingling in the legs and upper extremities.  (AR 1556).  Dr. Wilgarde noted that plaintiff should avoid lifting, pushing or pulling, crawling, kneeling, climbing or balancing, but plaintiff could occasionally bend and stoop, stand, walk, and sit.  (AR 1556).  Dr. Wilgarde did not explain how long he felt plaintiff could stand, walk and sit.  (AR 1556).

Plaintiff returned to Dr. Wilgarde on August 2, 2005, after one of her administrative hearings, informed him a medical expert had opined that plaintiff could work an eight-hour day, and asked Dr. Wilgarde to explain plaintiff's tolerances.  (AR 1604-07).[10]  Dr. Wilgarde noted that he believed that plaintiff

---

[9]A nerve conduction study dated March 27, 2003, showed only evidence of right median motor distal neuropathy without evidence of sensory neuropathy or denervation, with no evidence of cervical radiculopathy in plaintiff's upper extremities.  (AR 1591-94).  An MRI of plaintiff's cervical spine dated March 24, 2003, was essentially normal except for mild disc degeneration at C5-C6.  (AR 1115-16).

Plaintiff's physical therapist, Dwight Cornish, who worked with plaintiff from October 19, 2001 through at least September 30, 2004, claimed that the normal MRI failed to reflect his assessment that plaintiff suffers from cervical spine instability/alignment problems (AR 1500-01; see also AR 1482-1543 (physical therapy records)).  Cornish prepared a "Statement of Physical Capacity and Prognosis" dated December 18, 2003, wherein he opined that plaintiff could sit only 20 to 30 minutes, stand for two to three minutes, walk for 10 to 30 minutes on a treadmill with supervision and about half as much if outdoors, and could be out of bed only 5.5 hours per day for light activities of daily living.  (AR 1538).  The Court notes that a physical therapist is not an acceptable source of medical evidence to establish an impairment.  20 C.F.R. § 404.1513(a).

[10]Medical expert Dr. Landau testified in July 2005 that, based on his review of plaintiff's medical record, plaintiff would be capable of sitting six hours out of an eight-hour day and standing and walking two hours out of an eight-hour day for 15 to 30 minutes at a time, with the use of a cane as needed.  (AR 171-72).  Dr. Landau said he tried to defer to Dr. Wilgarde's suggestions in reaching his own opinion concerning plaintiff's capabilities.  (AR 171, 174).

(continued...)

1   could not work a six to eight hour day due to her need to lie down.  (AR 1605).

2   Dr. Wilgarde explained that plaintiff was unable to sit for prolonged periods of

3   time, but could sit, stand and walk for short periods of time (*i.e.*, no longer than

4   eight to 10 minutes at a time), with plaintiff's tolerance for such activities ranging

5   from five to 15 minutes, depending on her symptoms.  (AR 1605).[11]

6        The record also contains a lengthy medical evaluation from Dr. Dennis

7   Ainbinder dated November 23, 2005.  (AR 1610-35).  Dr. Ainbinder examined

8   plaintiff, noting:  (1) cervical spine pain upon 60 degree bends and rotations, on

9   flexion and extension (AR 1622); (2) right/left hand pain upon terminal motions of

10  certain joints (AR 1624); (3) an unsteady gait and lumbosacral spine pain upon

11  terminal extension (AR 1626); and (4) pain upon terminal flexion of both knees

12  and tenderness to the medial joint of the right knee.  (AR 1628).  Dr. Ainbinder

13  diagnosed plaintiff with a cervical myofascial sprain, sprains in both hands and in

14  plaintiff's left knee, status post arthrodesis lumbar spine for stellate fracture and

15  removal of hardware secondary to the surgery, and status post arthroscopic partial

16  medial meniscectomy of the right knee and a torn anterior cruciate ligament in the

17  right knee.  (AR 1630).  Dr. Ainbinder found plaintiff "100% disabled," noting the

18  following work restrictions:  (1) no repetitive motions of the neck, no very heavy

19  lifting, and no repetitive pushing, pulling and forward reaching; (2) no prolonged

20  walking, squatting, kneeling, ascending and descending stairs, walking on uneven

21  terrain or working at unprotected heights due to right knee limitations; and

22  ///

23

24     [10](...continued)

25  However, Dr. Landau noted that Dr. Wilgarde had not specified what Dr. Wilgarde meant when
    he said plaintiff could stand and walk for "brief" periods of time, which Dr. Landau interpreted

26  as 15 to 30 minutes at a time.  (AR 171-74).  The ALJ adopted Dr. Landau's opinion concerning
    plaintiff's physical residual functional capacity.  (AR 21).

27

28     [11]The ALJ rejected Dr. Wilgarde's explanation in determining plaintiff's residual
    functional capacity , finding that it was based entirely on plaintiff's subjective complaints.  (AR
    29-30).

1   (3) semi-sedentary work with the use of a brace and staffs due to lumbar spine
2   limitations.  (AR 1631-32).[12]
3                    **2.     The Record of Plaintiff's Subjective Complaints and**
4                            **Reported Daily Activities**
5            At plaintiff's 2007 hearing, plaintiff testified that she participated in pool
6   therapy about twice a week, tried to make her own breakfast consisting of cereal
7   and fruit or eggs, showered with assistance, then spent her days reading or resting,
8   listening to books on tape and the radio, and watching movies.  (AR 110-13).
9   Plaintiff said she spent most of her time laying in a reclining chair. (AR 112; see
10  also AR 151 (plaintiff testifying that Dr. Wilgarde prescribed her reclining
11  wheelchair and zero gravity chair)).  Plaintiff said she could stand five to 10
12  minutes before experiencing discomfort, making it hard for her to walk.  (AR 114-
13  15).
14          In an undated "Disability Report Adult" form, plaintiff asserted:  She could
15  sit for 20 minutes depending on the furniture, walk for 30 minutes on flat surfaces,
16  and stand a few minutes.  (AR 256).  For every hour or two plaintiff was up, she
17  had to rest an hour or two lying down.  (AR 256).  She had limited use of her right
18  hand due to carpal tunnel syndrome, and some concentration and short term
19  memory difficulty.  (AR 256).  Although plaintiff had returned to work for a short
20  period of time after her initial recovery from her accident, she had worked between
21  four and six hours per day and had taken frequent short breaks to lie on the floor
22  ///
23  ///
24  ///
25
26  _____
27  [12]Although Dr. Ainbinder noted "objective factors of disability" including a diminished
    range of motion in the cervical spine, operative findings of the lumbar spine and right knee, and
28  areas of tenderness with the left knee (AR 1631), the ALJ rejected Dr. Ainbinder's opinion as
    "not supported by the objective findings," opting instead to adopt medical expert Dr. Landau's
    earlier opinion.  (AR 30).

                                              11

1   and stretch her muscles.  (AR 256).  She stopped working because she was unable

2   to stay up as long as she needed to for her job.  (AR 256).[13]

3           **B.    The ALJ Failed Properly to Assess Plaintiff's Credibility**

4           As summarized above, the ALJ found plaintiff not disabled based in part on

5   a determination that plaintiff's subjective complaints were not entirely credible.

6   The veracity of plaintiff's subjective complaints are central to her disability

7   determination given:  (1) the medical record, which suggests that plaintiff suffers

8   from neurologic issues of unknown origin; and (2) Dr. Wilgarde's and Dr.

9   Ainbinder's opinions, which were based at least in part on plaintiff's subjective

10  complaints, that plaintiff is more functionally limited than the ALJ determined.

11                  **1.    Pertinent Law**

12          In determining a claimant's residual functional capacity, an ALJ must

13  consider all relevant evidence in the record, including medical records, lay

14  evidence, and the effects of symptoms, including pain, that are reasonably

15  attributed to a medically determinable impairment.  <u>Robbins v. Social Security</u>,

16  466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).  Careful consideration

17  should be given to any evidence about symptoms because subjective descriptions

18  ///

19

────────────────

20          [13]In a "Daily Activities Questionnaire" dated December 18, 2003, plaintiff reported:  On
    an average day she did one to two hours of isometric exercise in the morning followed by rest,
21  then attended physical therapy or pool therapy in the afternoon.  (AR 275).  She was out of
    reclining position a total of about five and a half hours per day, being up for five to 20 minutes at
22  a time.  (AR 275, 279).

23
            Plaintiff's husband reported similar limitations.  <u>See</u> AR 266-74 ("Function Report Adult
24  - Third Party" dated December 13, 2003).  He said that with the assistance of a care giver
    plaintiff attends physical therapy three days a week, acupuncture one day per week, and pool
25  therapy two days per week.  (AR 266, 269).  He said plaintiff cannot stand for long periods of
    time, cannot stoop, and cannot reach above her head.  (AR 268).  Plaintiff could only lift a few
26  pounds and could walk 50-100 feet before needing to rest for two to four minutes. (AR 271).
    Plaintiff reportedly watched TV or worked with photo albums five hours per day and spent one to
27  two hours per day using a laptop.  (AR 270, 273).  Plaintiff elsewhere explained that she uses a
    special table for her laptop that swings over her bed or reclining chair.  (AR 276).
28

1  may indicate more severe limitations or restrictions than can be shown by medical

2  evidence alone.  Id.  (citations omitted).

3       An ALJ is not required to believe every allegation of disabling pain or other

4  non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)

5  (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If, as here, the record

6  establishes the existence of a medically determinable impairment that could

7  reasonably give rise to the reported symptoms, an ALJ must make a finding as to

8  the credibility of the claimant's statements about the symptoms and their

9  functional effect.  Robbins, 466 F.3d at 883 (citations omitted).  Unless an ALJ

10 makes a finding of malingering based on affirmative evidence thereof, a finding

11 not made in this case, the ALJ may reject a claimant's testimony regarding the

12 severity of her symptoms only if the ALJ makes specific findings stating clear and

13 convincing reasons for doing so.  Id.  (citations omitted); see also Valentine v.

14 Commissioner, Social Security Administration, 574 F.3d 685, 693 (9th Cir. 2009)

15 (discussing standard); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)

16 (same); Carmickle v. Commissioner, Social Security Administration, 533 F.3d

17 1155, 1160 (9th Cir. 2008) (citations omitted) (same).  The ALJ's credibility

18 findings "must be sufficiently specific to allow a reviewing court to conclude the

19 ALJ rejected the claimant's testimony on permissible grounds and did not

20 arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882,

21 885 (9th Cir. 2004).  The ALJ must "specifically identify the testimony [the ALJ]

22 finds not to be credible and must explain what evidence undermines the

23 testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

24      To find the claimant not credible, an ALJ must rely on (1) reasons unrelated

25 to the subjective testimony (e.g., reputation for dishonesty); (2) internal

26 contradictions in the testimony; or (3) conflicts between the claimant's testimony

27 and the claimant's conduct (e.g., engaging in daily activities inconsistent with the

28 alleged symptoms, maintaining work inconsistent with the alleged symptoms,

1  failing, without adequate explanation, to take medication, to seek treatment or to
2  follow prescribed course of treatment).  Lingenfelter v. Astrue, 504 F.3d 1028,
3  1035-40 (9th Cir. 2007); Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch,
4  400 F.3d at 680-81; SSR 96-7p; see also Bray v. Commissioner of Social Security
5  Administration, 554 F.3d 1219, 1226-27 (9th Cir. 2009) ("In reaching a credibility
6  determination, an ALJ may weigh inconsistencies between the claimant's
7  testimony and his or her conduct, daily activities, and work record, among other
8  factors.")(citation omitted).[14]  Although an ALJ may not disregard a claimant's
9  testimony solely because it is not substantiated affirmatively by objective medical
10  evidence, the lack of medical evidence is a factor that the ALJ can consider in his
11  credibility assessment.  Burch, 400 F.3d at 681.

12      Questions of credibility and resolutions of conflicts in the testimony are
13  functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th
14  Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
15  and is supported by substantial evidence, it is not the court's role to "second-
16  guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

17              **2.    Analysis**

18      In finding that prior to plaintiff's date last insured plaintiff retained the
19  residual functional capacity to perform sedentary work, the ALJ discussed at
20  length plaintiff's complaints in the context of plaintiff's voluminous medical
21  record, and found that the objective medical findings did not support the degree of
22  limitation plaintiff alleged.  (AR 22-34).  The ALJ reasoned:
23  ///

24
25      [14]The Burch court explained:
26
27      [I]f a claimant engages in numerous daily activities involving skills that could be
        transferred to the workplace, the ALJ may discredit the claimant's allegations
28      upon making specific findings relating to those activities.

400 F.3d at 681 (citation omitted).

14

Although the claimant portrays herself as virtually incapacitated, there are simply no objective findings which support the claimant's allegations that she was unable to work through the date last insured of September 2003.  In fact, not even Dr. Weston, the claimant's treating psychologist could reconcile the claimant's symptoms with the objective findings.[15]  Moreover, the claimant participated in a wide range of activities through the date last insured.  She attended

---

[15]It is not clear from the record what the ALJ meant when he said Dr. Weston could not reconcile plaintiff's symptoms with the objective findings.  Dr. Weston reported first examining plaintiff on August 29, 2001, and seeing plaintiff weekly initially, then bi-monthly, with the last visit on or around February 8, 2006.  (AR 1082; see also AR 1448-71, 1573-90, 1637-40 (Dr. Weston's progress reports)).  Dr. Weston's various progress reports include his observations concerning plaintiff's physical limitations, including:  (1) plaintiff being visibly worn out after the 30 to 40 minute commute to Dr. Weston's office (1451); (2) consistent loss in plaintiff's ability to function following trips (AR 1452); (3) plaintiff's frequent need to adjust her supports and cushions during therapy sessions and attendant restlessness and discomfort (AR 1462, 1574); and (4) plaintiff unsteadiness when moving from her car to Dr. Weston's office (AR 1574).

Dr. Weston completed a "Neuropsychological Evaluation" for plaintiff in September and October 2001.  (AR 1472-81).  Dr. Weston administered a battery of psychological tests and noted some disparities in plaintiff's subtesting occurring more often in brain damaged populations (e.g., difficulty in mentally double-tracking, holding information in her head and manipulating it).  (AR 1474-76).  Dr. Weston concluded, however, that plaintiff's performance did not suggest "clear cut memory deficits."  (AR 1477).  Dr. Weston observed plaintiff having difficulty with sustained attention and concentration problems on more complex forms of intellectual activity.  (AR 1479).  Dr. Weston also noted "[a]n inefficiency and awkwardness" in plaintiff's right hand coordination.  (AR 1480).

Dr. Weston prepared a later evaluation and mental residual functional capacity assessment dated August 18, 2005.  (AR 1596-1602).  Dr. Weston noted extreme restrictions of activities of daily living due to plaintiff's physical limitations and pain, "continual" impairment in memory and ability to organize her thinking, and "continual" episodes of deterioration or decompensation. (AR 1599).

Without further explanation, the ALJ's bare reference to Dr. Weston's inability to reconcile plaintiff's symptoms with the objective findings is not a sufficiently "specific, clear and convincing reason" to support the adverse credibility finding.  See Vasquez v. Astrue, 572 F.3d at 592 (finding ALJ's failure to discuss physician findings, or any specific medical evidence in rejecting claimant's subjective complaints of pain, rendered insufficient the ALJ's adverse credibility determination).

pool and other physical therapy several times a week, and she swam

at a relative's home.  She worked on photo albums, listen[ed] to

books on tape, listened to music, used her computer, regularly phoned

elderly shut-ins, and attended church twice a month.  She also has a

good social network. . . . [T]he claimant reported she can do simple

cooking and she enjoys working on photo albums.  She said she was

unable to get around without physical assistance and she required

help dressing below the waist. . . .   In a letter dated January 5, 1999,

the claimant reported that when she returned from vacation, she could

only handle six hours of activity a day, which included exercising,

working in the kitchen, walking, and being around others.  However,

most people normally work no more than 6 hours out of an 8-hour

work day, minus lunch and other breaks. . . . [A]fter work, she needed

to rest and ice her back. . . .   The claimant also reported that her main

complaint was dizziness, headaches, and memory loss.

(AR 33-34).[16]  The reasons articulated by the ALJ for discounting plaintiff's
subjective complaints are inadequate.

    First, while the ALJ could discredit plaintiff's subjective symptom
testimony due to plaintiff's "wide range" of daily activities, Burch, 400 F.3d at
680, plaintiff consistently reported that she was limited in her ability to engage in

---

[16]Similarly, the ALJ rejected plaintiff's husband's third party report concerning plaintiff's
limitations based on the medical record and plaintiff's reported daily activities, reasoning:

. . . [T]he record does not support a finding that the claimant's condition is further
limitation [sic] than the sedentary exertion level found herein. . . . Considering the
fact that the claimant attended therapy five days a day [sic], and considering that
she did these other activities including laundry, making meals, watching
television, and working on hobbies, an inference can be made that the claimant
was functional for at least 8 hours out of each workday.

(AR 35).

1   daily activities for a period longer than six hours per day.  (AR 275, 279, 683,

2   1643).  Plaintiff's limited daily activities, which consisted mostly of seeking

3   ongoing treatment for her physical condition, do not support the inference that

4   plaintiff was or could be functional for a normal eight-hour workday.  Compare

5   Burch, 400 F.3d at 680 (9th Cir. 2005) (upholding adverse credibility

6   determination where claimant's daily activities "suggest that she is quite

7   functional," where the claimant was "able to care for her own personal needs,

8   cook, clean and shop") (internal quotations and citation omitted); Archambeault v.

9   Astrue, 321 Fed. Appx. 601, 603 (9th Cir. 2009) (upholding adverse credibility

10  determination based upon claimant's ability to perform daily activities including

11  "household chores, such as grocery shopping, caring for pets. . ., cook[ing],

12  wash[ing] dishes, and perform[ing] yard work").[17]

13      Assuming, arguendo, that plaintiff could work six continuous hours per day,

14  there is no evidence to suggest that plaintiff could complete a normal eight-hour

15  work day.  See SSR 96-8p (a claimant's residual functional capacity for disability

16  purposes is the ability to do "work-related" activities on a "regular and continuing

17  basis," i.e., for eight hours per day, five days per week, or an equivalent work

18  schedule).  The ALJ's unsupported conclusion that "most people normally work

19  no more than 6 hours out of an 8-hour work day, minus lunch and other breaks" is

20  not substantial evidence, nor is it an "inference logically flowing from the

21  evidence."   See generally Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.

22  1982).  At a minimum, the ALJ should have inquired of the vocational expert to

23  support this conclusion.

24      Second, while an ALJ may discredit a plaintiff's subjective symptom

25  testimony due, in part, to the absence of supporting objective medical evidence, it

26  may not be the sole reason.  Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857

27

28      [17]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1,
2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1  ("While subjective pain testimony cannot be rejected on the sole ground that it is
2  not fully corroborated by objective medical evidence, the medical evidence is still
3  a relevant factor in determining the severity of the claimant's pain and its
4  disabling effects.") (citation omitted).  Since the ALJ's reliance on plaintiff's
5  limited daily activities to support the adverse credibility determination was
6  improper, the ALJ  could not rely on the purported failure of the objective medical
7  evidence to support the degree of limitations plaintiff alleges as the sole remaining
8  reason to reject plaintiff's credibility.

9        On this record, the Court cannot say that the ALJ adequately considered
10 plaintiff's subjective complaints, or that the ALJ's failure to adopt greater
11 limitations was harmless.  While the vocational expert testified that a person
12 having the limitations the ALJ found to exist could perform several jobs existing
13 in the national economy, the expert did not offer an opinion that a person limited
14 to no more than six hours of activity per day could perform those jobs or other
15 work existing in the national economy.   (AR 118-23 (vocational expert
16 testimony)).[18]

17 ///
18 ///
19 ///
20 ///

21

22

23        [18]Nor is this a case "where there are no outstanding issues that must be resolved before a
   proper disability determination can be made, and where it is clear from the administrative record
24 that the ALJ would be required to award benefits if the claimant's. . . testimony were credited,"
   such that plaintiff's testimony should be credited as true and benefits awarded.  Vasquez v.
25 Astrue, 572 F.3d at 593.  When a court reverses an administrative determination, "the proper
   course, except in rare circumstances, is to remand to the agency for additional investigation or
26 explanation."  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002)
   (citations and quotations omitted).  Remand is proper where, as here, additional administrative
27 proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603
   (9th Cir. 1989); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an
28 option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).

1   **V.      CONCLUSION**[19]

2          For the foregoing reasons, the decision of the Commissioner of Social

3   Security is reversed in part, and this matter is remanded for further administrative

4   action consistent with this Opinion.

5          LET JUDGMENT BE ENTERED ACCORDINGLY.

6   DATED:    January 13, 2010

7                                              _____/s/_____

8                                              Honorable Jacqueline Chooljian
                                               UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    _____
    [19]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
    decision except insofar as to determine that a reversal and remand for immediate payment of
    benefits would not be appropriate.